**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                        :
SUSANNE BANNON,                         :
                                        :         Civil Action No. 14-1229 (FLW)(LHG)
                     Plaintiff,         :
                                        :                    **OPINION**
        v.                              :
                                        :
ALLSTATE INSURANCE CO.                  :
                                        :
                     Defendant.         :
_____      :

**WOLFSON, United States District Judge**:

        This case arises out of a three-Count Second Amended Complaint, which alleges that Plaintiff Susanne Bannon's ("Plaintiff" or "Bannon") home was destroyed in Hurricane Sandy, and asserts that Defendant Allstate  Insurance Co. ("Defendant" or "Allstate") has wrongfully denied coverage and underpaid for the damage to her home. Specifically, the Complaint alleges (Count I) breach of contract; (Count II) breach of the implied covenant of good faith and fair dealing; and (Count III) Violation of the New Jersey Consumer Fraud Act. Defendant moves, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss Counts II and III, and Plaintiff's claims for punitive damages and attorney's fees.

        For the reasons expressed below, Defendant's Motion to Dismiss is granted in part and denied in part. Specifically, the motions to dismiss Counts II, breach of the implied covenant of good faith and fair dealing, and Count III, for violation of the New Jersey Consumer Fraud Act, are denied; the motion to dismiss Plaintiff's claims for punitive damages is granted; and the

1

motion to dismiss Plaintiff's claims for attorney's fees is granted with respect to Count II, but is denied as to Count III.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The facts provided here come from the Second Amended Complaint and from documents which form the basis for the Complaint. The Court assumes such facts to be true for the purposes of this Motion. Plaintiff, a resident of Union Beach, New Jersey, purchased a "Deluxe Homeowners Insurance Policy" from Defendant, with a liability limit of $241,231 for the dwelling, $24,123 for other structures, $168,862 for personal property, and up to nine months of living expenses. 2d Am. Compl. at ¶¶ 1, 3; Walters Decl. Ex. B at 7[1]. The policy provided that coverage for dwellings or other structures did not include loss caused by "flood, including, but not limited to, surface water, waves, tidal water or overflow of any body of water or spray from any of these things, whether or not driven by wind." Walters Decl. Ex. B. at 47. The same language limits coverage for personal property. *Id.* at 53. Plaintiff paid all premiums when due, and the policy was in full force and effect when Hurricane Sandy made landfall on October 29, 2012. 2d. Am. Compl. at ¶¶ 13–14.

On October 29, 2012, Plaintiff's home was destroyed by Hurricane Sandy. 2d Am. Compl. at ¶ 1. Plaintiff suffered over $434,216 in damages. *Id.* at ¶¶ 4, 17.  Plaintiff reported the damage and submitted the appropriate documentation and claim for damages to Allstate. *Id.* at ¶ 18. According to the Complaint, Allstate's adjuster, Steve Bryan Gladu, stated to Plaintiff that the destruction of Plaintiff's home was due to wind damage. *Id.* at ¶ 21. The Complaint alleges

---

[1] Walters Declaration Exhibit B is Ms. Bannon's policy. Because these pages are not numbered consecutively, the page numbers given herein will be the numbers of the pages of the Exhibit when viewed as a PDF file.

that other evidence, including statements from witnesses, photographic evidence, and professional opinions, support a finding that Plaintiff's home was destroyed as a result of wind damage. *Id.* at ¶¶ 22–24. On June 12, 2013, Plaintiff received a letter from Allstate denying the claim. *Id.* at ¶ 29. According to the Complaint, the letter did not cite to any clear evidence to support the position to deny coverage. *Id.* at ¶ 30. However, following the denial of coverage, an engineer inspected Plaintiff's home. *Id.* at ¶ 28. Plaintiff asserts that Allstate, its agents, servants, and employees, improperly adjusted and denied her claims, failed to properly investigate the damage, and unjustifiably refused to perform its obligations. *Id.* at ¶¶ 31–34.[2]

On February 25, 2014, Plaintiff filed the original two-Count Complaint, alleging breach of contract and breach of the implied covenant of good faith and fair dealing. The First Amended Complaint, alleging the same two Counts, was filed on May 20, 2014. Following Defendant's Motion to Dismiss Count II of the First Amended Complaint and the claims for punitive damages and attorney's fees, Plaintiff filed the Second Amended Complaint on June 23, 2014, which added Count III, violation of the New Jersey Consumer Fraud Act. On July 7, 2014, Defendant filed the present Motion to Dismiss, which requests dismissal of Counts II (breach of the implied covenant of good faith and fair dealing) and III (violation of the New Jersey Consumer Fraud Act) of the Second Amended Complaint, as well as Plaintiff's claims for punitive damages and attorney's fees.[3]

---

[2] Plaintiff evidently received insurance money for flood damage from a separate flood policy. *See* 2d. Am. Compl. at ¶ 47.

[3] On December 2, 2014, Plaintiff submitted a letter arguing that the Hurricane Sandy Case Management Order ("HSCMO") should apply to this case, and that, under the HSCMO, the Motion to Dismiss is premature. The HSCMO applies to "Hurricane Sandy cases involving standard flood insurance policies sold and administered by participating Write Your Own Program insurance companies in accordance with the National Flood Insurance Program . . . in addition to direct claims against the Federal Emergency Management Agency pursuant to the

## II. STANDARD OF REVIEW

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149–50 n. 3 (1984) (quotation and citation omitted). A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" *Bell Atlantic v. Twombly*, 550 U.S. 544, 583 (2007) (quoting *Scheuer v. Rhoades*, 416 U.S. 232, 236 (1974)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for all civil actions.") (internal citations omitted); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("*Iqbal* . . . provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before *Twombly.*").

---

NFIA." The HSCMO also provides that cases setting forth claims for damages caused by sources other than flooding "shall be reassigned to the same District Judge and Magistrate Judge and consolidated for discovery purposes." However, this case does not involve a Write Your Own Program insurance company, or a claim against the Federal Emergency Management Agency, nor is there a related case involving such claims. The HSCMO therefore does not apply here. The Court also notes with disapproval that this argument was not raised until approximately four months after the return date for the motion.

Following the *Twombly/Iqbal* standard, the Third Circuit applies a two-part analysis in reviewing a complaint under Rule 12(b)(6). First, a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Fowler,* 578 F.3d at 210. Second, a district court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* A complaint must do more than allege the plaintiff's entitlement to relief. *Id.* However, this standard "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 127 U.S. at 1965); *see also Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim . . . . The pleading standard is not akin to a probability requirement, . . . to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citations omitted)). Nonetheless, a court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997). The defendant bears the burden of showing that no claim has been presented. *Hedges v. U.S.*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

Finally, a court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. *Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999). However, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Defendant has attached to its Motion to Dismiss a declaration from its counsel, Mark J. Walters, and four Exhibits, including, *inter alia*, Plaintiff's Homeowners Policy, a map from Google.com showing the location of Plaintiff's property, and the report of an engineer retained by Allstate to determine the cause of damage to Plaintiff's property. Because Plaintiff's Complaint is based on the Homeowners Policy, this document may be considered by the Court; the remaining documents, including the statements made by counsel in the declaration, do not form the basis for plaintiff's claims, and therefore will not be considered for this Motion.

## III. DISCUSSION

Because the New Jersey Consumer Fraud Act expressly provides for the award of attorney's fees, and because the substantive claims may impact the availability of remedies, I shall first address the motions on the substantive claims, then the motions related to the remedies.

### A. Breach of Implied Covenant of Good Faith and Fair Dealing

Defendant argues that there can be no claim for a breach of the covenant of good faith and fair dealing if the claims decision is "fairly debateable." Def. Br. at 7. Defendant further asserts that the facts as alleged in the Complaint and the exclusions in the policy establish that Defendant's decision was at least fairly debateable, and therefore the claim for breach of the covenant of good faith and fair dealing should be dismissed. *Id.* at 8. Plaintiff contends that the statements of Gladu are sufficient to find that Allstate accepted liability for her alleged wind damages, and that the later refusal of coverage was therefore in bad faith. Pl. Br. at 10.

The seminal case describing the cause of action in New Jersey for the violation of the breach of good faith and fair dealing in an insurance context is *Pickett v. Lloyd's*, 621 A.2d 445 (N.J. 1993). The New Jersey Supreme Court held that "an insurance company owes a duty of good faith to its insured in processing a first-party claim." *Id.* at 450. However, for this cause of action, "[i]f a claim is 'fairly debatable,' no liability in tort will arise." *Id.* at 453 (internal quotation marks and citation omitted). In the context of denial of benefits, the "fairly debateable" standard means that "a claimant who could not have established as a matter of law a right to summary judgment on the substantive claim would not be entitled to assert a claim for an insurer's bad-faith refusal to pay the claim." *Id.* at 454.

The question of whether the claim is "fairly debatable" is, clearly, a fact-specific question. Moreover, it is not obvious from the face of the Second Amended Complaint, including the alleged facts that an Allstate adjuster initially opined that the damage to Plaintiff's home was cause by wind, and that Allstate sent an engineer to inspect the property after its denial of coverage, that the denial of coverage for alleged wind damages was "fairly debateable."[4] While this claim may be subject to dismissal on a summary judgment motion, following discovery, the Second Amended Complaint states sufficient facts to permit the claim to go forward. Thus, Defendant's Motion to Dismiss Count II, breach of the implied covenant of good faith and fair dealing, is denied.

### B. Violation of the New Jersey Consumer Fraud Act

Defendant argues that the denial of insurance benefits does not fall within the scope of the New Jersey Consumer Fraud Act (CFA). Def. Br. at 11. Plaintiff points out that this

---

[4] Indeed, Defendant has not moved to dismiss the breach of contract claim.

determination has been called into question by recent New Jersey Supreme Court and Third Circuit precedents. Pl. Br. at 13.

New Jersey courts have, since the 1980s, held that the CFA does not apply to the payment of insurance benefits. *See Nikiper v. Motor Club of America*, 557 A.2d 332, 336 (N.J. App. Div.), *certif. denied*, 564 A.2d 863 (N.J. 1989); *Pierzga v. Ohio Casualty Group of Ins. Cos.*, 504 A.2d 1200, 1203–04 (N.J. App. Div.), *certif. denied*, 517 A.2d 402 (N.J. 1986). And, at one time, the Third Circuit agreed. *See Van Holt v. Liberty Mutual Fire Ins. Co.*, 163 F.3d 161, 168 (3d Cir. 1998).  In 1997, though, the New Jersey Supreme Court applied the CFA to the sale of insurance, holding that "the [CFA]'s language is ample enough to encompass the sale of insurance policies as goods and services that are marketed to consumers." *Lemelledo v. Benefit Mgmt. Corp.*, 696 A.2d 546, 551 (N.J. 1997). While the New Jersey Supreme Court noted that "several lower courts have held that the payment of insurance *benefits* is not subject to the CFA," the Court expressly declined to rule on the validity of those holdings. *Id.* at 551, 551 n.3. Ten years later, relying on *Lemelledo*, the Third Circuit overturned a District Court decision finding that the CFA did not apply to an alleged scheme to defraud insureds of their benefits. *Weiss v. First Unum Life Ins. Co.*, 482 F.3d 254, 266 (3d Cir. 2007). The Third Circuit stated that that:

> while the New Jersey Supreme Court has been silent as to this specific application of CFA, its sweeping statements regarding the application of the CFA to deter and punish deceptive insurance practices makes us question why it would not conclude that the performance in the providing of benefits, not just sales, is covered.

> [*Id.*]

Following the Third Circuit's decision, as noted by Plaintiffs, judges in this District have declined to dismiss insurance payment claims based on the CFA. *See Beekman v. Excelsior Ins. Co.*, No. 14-cv-363, 2014 U.S. WL 674042 (D.N.J. February 21, 2014); *Bartels v. Hudson Ins.*

8

*Co.*, No. 05-cv-3890, 2008 WL 5070660 (D.N.J. Nov. 24, 2008). However, the New Jersey Appellate Division has continued to hold that "while the CFA 'encompass[es] the sale of insurance policies as goods and services that are marketed to consumers,' 'the payment of insurance benefits is not subject to the CFA.'" *See Beaver v. Magellan Health Servs.*, 80 A.3d 1160, 1168 n.1 (N.J. App. Div. 2013) (quoting *Lemelledo*, 696 A.2d at 551).

To ascertain the controlling state law, in the absence of a decision by that State's highest court, a federal court must attempt to predict how the state Supreme Court would decide the question. *Hamme v. Dreis & Krump Mfg. Co.*, 716 F.2d 152, 155 (3d Cir. 1982). "[T]he decisions of intermediate state courts having statewide jurisdiction are normally a strong indication of what the state law is." *Id.* However, these decisions may be disregarded if the court "is convinced by other persuasive data that the highest court of the state would decide otherwise." *Id.* at 156 (emphasis removed). The Third Circuit, in *Weiss*, closely examined the "sweeping statements" made by the New Jersey Supreme Court with regard to the CFA and fraudulent insurance practices, and the Supreme Court's determination that applying the other regulations which apply to insurance did not bar the application of the CFA to the sale of insurance. 482 F.3d at 266. The Third Circuit thus predicted that the New Jersey Supreme Court will ultimately determine that the CFA does apply to the payment of insurance benefits. *Id.* The New Jersey Appellate Division, in contrast, has not performed a new analysis of the CFA's applicability to insurance benefits, despite the New Jersey Supreme Court's broad statements, but relies on the Court's non-determination of the issue. *See Beaver*, 80 A.3d at 1168 n.1.

I will follow the Third Circuit's lead by predicting that the New Jersey Supreme Court would find that the New Jersey CFA applies to the payment of insurance benefits. Accordingly, Defendant's Motion to Dismiss Count III, which asserts a violation of the CFA, is denied.[5]

### C. Punitive Damages

Defendant argues Plaintiff has failed to plead facts showing "egregious circumstances," "actual malice" or "wanton and willful disregard of persons," which are necessary to maintain a claim for punitive damages. Def. Br. at 8–9. Plaintiff argues that Defendant's actions, as alleged in the Second Amended Complaint, of "denying coverages for damages that an insurance company's agent has already admitted liability for, and then hiring an engineer to validate a decision already made when threatened with bad faith, all in an effort to enlarge profits" are sufficient to permit punitive damages. Pl. Br. at 11.

*Pickett*, while recognizing a cause of action for bad faith denial refusal to pay a first-party claim, held that "absent egregious circumstances, no right to recover for emotional distress or punitive damages exists for an insurer's allegedly wrongful refusal to pay a first-party claim." 621 A.2d at 455. Rather, according to the New Jersey Supreme Court "deliberate, overt, and dishonest dealings . . . constitute torts entirely distinct from the bad-faith claim." *Id.* (internal quotation marks and citation omitted). In addition, the New Jersey Punitive Damages Act provides that punitive damages may only be awarded if the plaintiff proves that the defendant's acts or omissions "were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions." N.J. Stat. Ann. § 2A:15-5.12.

---

[5] Defendant has not argued that the Second Amended Complaint fails to state a substantive claim under the CFA, but relies solely on the assertion that the CFA does not cover the payment of insurance benefits.

Even if Plaintiff can show that Defendant acted in bad faith, Plaintiff has not pleaded facts that rise to the level of egregiousness necessary for punitive damages in an insurance contract case. Certainly the facts as alleged do not show actual malice, or a wanton and willful disregard of persons who might be harmed. Thus, the claim for punitive damages is dismissed.[6]

### D. Attorney Fees

The Second Amended Complaint includes two requests for attorneys' fees. In Count II, for breach of the implied covenant of good faith and fair dealing, Plaintiff asserts that "Allstate is liable to Ms. Bannon for compensatory, consequential, and punitive damages . . . [including] attorneys' fees and expenses." 2d Am. Compl. at ¶ 52. In addition, Plaintiff's prayer for relief requests attorneys' fees.

Defendant argues that New Jersey law precludes granting attorney fees on first-party claims for insurance benefits. Indeed, while N.J. Court R. 4:42-9(a)(6) provides that attorney fees may be permitted "[i]n an action upon a liability or indemnity policy of insurance, in favor of a successful claimant," the New Jersey Supreme Court has stated that this Rule does not apply when an insured "'brings direct suit against his insurer to enforce casualty or other direct coverage.'" *Auto Lenders Acceptance Corp. v. Gentilini Ford, Inc.*, 854 A.2d 378, 399 (N.J. 2004) (quoting *Eagle Fire Prot. Corp. v. First Indem. of Am. Ins. Co.*, 678 A.2d 699, 708 (N.J. 1996)). Plaintiff, however, relies on a New Jersey Appellate Division case, which stated, in dicta, that the measure of damages for a bad faith claim, under *Pickett*, "would be any foreseeable consequential damages. This might typically include, for example, costs of litigation, including expenses for experts and counsel fees, and prejudgment interest." *Taddei v. State Farm*

---

[6] The New Jersey Consumer Fraud Act mandates the award of treble damages. N.J. Stat. Ann. 56:8-19. The dismissal of the claim for punitive damages does not impact Plaintiff's potential to receive treble damages under the CFA, if successful on that claim.

*Indemnity Co.*, 951 A.2d 1041, 1048 (N.J. App. Div. 2008). There do not appear to be any cases that examine the Appellate Division's dicta stating that counsel fees may be a consequential damage of a breach of the covenant of good faith and fair dealing in light of the New Jersey Supreme Court's holding that the Court Rule permitting attorney fees does not apply to first-party insurance suits.

I find that the New Jersey Supreme Court's holding barring the recovery of attorney fees by an insured bringing direct suit against his insurer to enforce direct coverage applies in this case. Although the costs of litigation may be a foreseeable consequence of a breach of the covenant of good faith and fair dealing, under controlling New Jersey precedent, attorney's fees are not permitted in cases where an insured sues his insurer for direct coverage. Thus, the plaintiff's claim for attorney's fees with respect to Count II is dismissed.

However, the CFA mandates recovery of attorney's fees. N.J. Stat. Ann. § 56:8-19 ("In all actions under this section, . . . the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit."). Therefore, Plaintiff's general prayer for relief, requesting attorney's fees, cannot be dismissed. Thus, as applied to the general prayer for relief, and to Count III, breach of the CFA, the Motion to Dismiss Plaintiff's claim for attorney's fees is denied.


**IV. CONCLUSION**

For the reasons stated above, Defendant's Motion to Dismiss is granted in part and denied in part. Specifically, Defendant's Motion to Dismiss Count II, breach of the covenant of good faith and fair dealing, and Count III, for breach of the CFA is denied. Defendant's Motion to Dismiss Plaintiff's claims for punitive damages is granted, and this claim is dismissed.

Defendant's Motion to Dismiss Plaintiff's claim for attorney's fees is granted only with respect to Count II; with respect to the general prayer for relief, Defendant's Motion to Dismiss the claim for attorney's fees is denied as it applies to Count III.

An appropriate Order shall follow.


Date: February 24, 2015

                                                     /s/ Freda L. Wolfson
                                                    Freda L. Wolfson, U.S.D.J.